UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER J. DEMEO,

                 Plaintiff,

v.

    CAROLYN COLVIN, Acting Commissioner
    Social Security Administration,

                 Defendant

Civil Action No. 13-CV-11444-DLC


ORDER ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE
COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION (#20) AND
DEFENDANT'S CROSS-MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
OF THE SOCIAL SECURITY ADMINISTRATION (#24)

September 30, 2015

CABELL, U.S.M.J.


The Plaintiff, Peter J. Demeo (Plaintiff), suffers from spina bifida and bipolar disorder among

other things.  He previously applied for two different types of disability benefits, Supplemental Security

Income ("SSI") disability benefits, and adult child insurance benefits, which are based upon the earnings

of a deceased parent.  The Defendant, Commissioner of Social Security (Defendant or the

Commissioner), granted the application for SSI disability benefits but denied his application for child

insurance benefits.  Plaintiff challenges the denial of the child insurance benefits application and asks the

Court to reverse the Commissioner's decision and order that he receive benefits.  (Plaintiff's Motion to

Reverse the Decision of the Commissioner of the Social Security Administration, Dkt. No. 20).

Defendant in turn cross-moves for affirmation of its decision.  (Commissioner's Cross-Motion to Affirm

the Decision of the Commissioner of the Social Security Administration, Dkt. No. 24).  After

consideration of the parties' submissions and the evidence adduced from oral argument, and as explained

more fully below, the Court finds that the Commissioner committed reversible error by failing to consult

with a medical expert to help clarify ambiguity over the onset date of Plaintiff's disability.  Plaintiff's

motion is accordingly granted, in part; the Court reverses the Commissioner's decision and remands the

matter for further proceedings in accordance with this ruling.  Commissioner's cross-motion is denied.

## I.    BACKGROUND

### A.  Education, Work and Personal History

Plaintiff was born in 1970 and was most recently living with a family relative.  Plaintiff testified

that he has attempted to live alone but has not been able to do so due to violent outbursts against

roommates and landlords.  (Administrative Record, Dkt. No. 19 at p. 42).

Plaintiff attended high school and participated in a special education program, but did not

graduate.  (*Id*. at pp. 38, 43).  He has never worked regularly.  In the early 1990s, he worked for short

periods at a toy store and a restaurant but was fired in both cases due to violent behavior.  (*Id*. at pp. 44-

47).  Plaintiff has not had regular employment since that time.

### B.   Medical History

Plaintiff has been diagnosed with bipolar disorder, ADHD and spina bifida.  He has received

periodic treatment for mental illness since childhood.  Plaintiff has also been prone to violent behavior.

Among other things, Plaintiff was involved in assaults on friends and co-workers in 1987, the early 90s,

2002 and 2004, and has been arrested for violent behavior on more than one occasion.

Plaintiff attended counseling sessions with Dr. Bruce J. Holstein in the mid-80s.  Dr. Holstein

diagnosed Plaintiff with ADHD and noted that Plaintiff was prone to violent behavior, often bullied other

children, and was sometimes paranoid.  (*Id*. at pp. 627-628).  In 1987, Plaintiff was admitted to McLean

Hospital ("McLean"), a psychiatric facility, after stabbing one of his friends.  Plaintiff spent a year at

McLean and was provisionally diagnosed there with conduct disorder, dysthymia and alcohol abuse.  (*Id*.

at pp. 518-521).

In February 1991, Plaintiff sought treatment for back pain and was diagnosed with spina bifida. (*Id.* at p. 623).

On July 22, 1992, Plaintiff turned twenty-two.  Subsequently, he was hospitalized on multiple occasions due to mental illness, including stays at Middlesex Mental Hospital in 1994, and UMass Medical Center (UMass) in 1998 and 2002.  (*Id*. at pp. 532-536, 625).  At UMass he was diagnosed with bipolar disorder and substance abuse issues.

Plaintiff apparently did not seek medical treatment or take prescribed medications between 2002 and 2004.  In 2004 Plaintiff sought treatment at McLean, where doctors diagnosed him with bipolar disorder and ADHD and provided him with a treatment plan.  (*Id.* at pp. 586-588).

In 2006 and 2007, and in connection with Plaintiff's application for adult child insurance benefits, the Commissioner requested opinions from four advising physicians to the Disability Determination Service.  Dr. Jo Ann Jones and Dr. M.A. Gopal both opined that Plaintiff's spina bifida restricted him to work at the light exertion level during the period of 1988 through 1992.  (*Id*. at pp. 537-544, 574-581). Dr. D. Levoy and Dr. Nancy Keuthen were both asked to evaluate Plaintiff's mental condition from 1988 through 1992.  The evaluation form used by Dr. Levoy and Dr. Keuthen included a number of possible "Medical Dispositions," including that Plaintiff had "no medically determinable impairment," or that Plaintiff had an impairment, but it was "not severe.  Neither Dr. Levoy, nor Dr. Keuthen concluded that Plaintiff was not impaired between 1988 and 1992.  Instead, both checked a box indicating that there was "insufficient evidence" to evaluate Plaintiff's mental condition.  Beyond doing so, neither physician provided any other information for the ALJ's consideration.  (*Id*. at pp. 545-558, 560-573).

In 2008, Dr. Holstein, the physician who had treated Plaintiff several years earlier in the 1980's wrote a letter to the ALJ in support of Plaintiff's application for adult child insurance benefits.  He opined that Plaintiff's "problems" were "consistent with the problems he presented with in 1983 to 1986 and represent the evolution of his Bipolar Disorder over time."  (*Id*. at p. 626).

In 2009, Dr. Richard H. Stellar examined Plaintiff in connection with Plaintiff's continuing disability review (CDR).  Dr. Stellar provided "diagnostic impressions" of "bipolar illness," "rule out

ADHD" and "panic disorder." (Id. at pp. 766-772). Although not conclusive by any stretch, a fair read of these "impressions" is that Dr. Steller felt that Plaintiff showed some signs of bipolar disorder.

At a 2011 hearing, Plaintiff testified that he was not currently taking any psychiatric medications because he did not like the side-effects, and preferred to self-medicate with marijuana and meditation. (*Id*. at p. 56).

## II.      PROCEDURAL HISTORY

Plaintiff applied for SSI benefits in 1993 but the application was denied. Plaintiff filed a second application for SSI benefits in February of 1995 and this time the Commissioner allowed the application after finding that Plaintiff was disabled as of May 1, 1994 due to bipolar disorder and spina bifida. Plaintiff began receiving SSI in February 1995 and continues to receive those benefits at present.

In May of 2006, and separate and apart from the SSI disability benefits he was receiving, Plaintiff applied for adult child insurance disability benefits. Relevant here, Plaintiff, to be eligible for these benefits, was required to show that he had been continuously disabled since before his 22nd birthday, that is, before July 22, 1992. Plaintiff claimed as much but the application was denied.

Plaintiff appealed and obtained a hearing before an Administrative Law Judge (ALJ), in February of 2008. The ALJ subsequently issued an unfavorable decision after finding that there was insufficient evidence to demonstrate that Plaintiff was continuously disabled before the age of 22. (*Id*. at pp. 103-130). In particular, the ALJ found that Plaintiff could not show that he was disabled between 1988 and 1994, a period of time that spanned from about the ages of 18 to 24. (*Id*. at p. 126). The ALJ also flagged Plaintiff's file for a continuous disability review ("CDR") with respect to the SSI benefits he was receiving. Presumably, this reflected some question on the ALJ's part as to whether Plaintiff's disability continued or would continue to exist. A CDR was conducted in 2009 and the Commissioner determined that Plaintiff remained disabled due to spina bifida and bipolar disorder.

Plaintiff appealed the ALJ's 2008 unfavorable decision. (*Id*. at pp. 214-217). In 2010, the Appeals Council reversed the ALJ and remanded the matter for a new hearing because the ALJ's 2008 decision had been based in part on medical opinions that were not a part of the record. The Appeals

Council stated that the ALJ should, "if warranted," consider obtaining medical expert testimony to confirm the onset date of Plaintiff's disability. (*Id*. at pp. 131-133.)

The ALJ convened a new hearing in 2011. (*Id*. at pp. 28-72). In the interim, however, the SSA had lost some of Plaintiff's files, including files from the 1993 and 1995 SSI applications and the 2009 CDR, so those files were not available for the ALJ's consideration. However, the ALJ had records of Plaintiff's medical history, summarized above, and Plaintiff and a vocational expert testified. Notwithstanding the Appeals Council's prior suggestion, the ALJ did not as part of the process consult with a medical expert on the issue of the onset of Plaintiff's disability. (*Id*.)

### III.     SUMMARY OF COMMISSIONER'S DECISION

In February of 2012, and following unsuccessful attempts to locate Plaintiff's missing files, the ALJ issued an unfavorable decision finding that Plaintiff was not eligible for adult child insurance benefits. (*Id.* at pp. 134-153). The ALJ assumed for the sake of argument that Plaintiff was disabled before age 22, but found that he had failed to show he was *continuously* disabled before that age. The ALJ reached this conclusion after following part of a mandated five-step evaluation process. *See* 20 C.F.R. § 404.1520.

Step one considers whether the claimant is engaged in substantial gainful activity, because a claimant who is so engaged is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1988. *(Id.* at p. 149).

Step two considers whether the applicant's impairment is severe within the meaning of the pertinent regulations. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found that Plaintiff had a history of spina bifida, ADHD, bipolar disorder and polysubstance abuse but, relying on the gaps in Plaintiff's treatment and the ALJ's own opinion that Plaintiff was "calm, relaxed, and articulate" when appearing  before the ALJ, the ALJ found that none of these impairments was severe within the meaning of the regulations. (*Id*. at pp. 150 -152). The ALJ gave little weight to Plaintiff's own testimony regarding his limitations because Plaintiff had not sought treatment or been prescribed medication for several years. (*Id.* at p. 152). Although the ALJ's opinion does not expressly so state, the ALJ's focus on the gaps in Plaintiff's

treatment history between 1988 and 1994 suggests that the ALJ also found that Plaintiff had not established a continuous disability during that time period (*i.e.*, from age eighteen through twenty-four). (*Id*. at p. 151).  The ALJ acknowledged but gave little weight to the opinions of Dr. Holstein (fairly favorable) and Dr. Stellar (mildly favorable), whose submissions in tandem with Plaintiff's own testimony tended to support Plaintiff's claim that he suffered from bipolar disorder.  Instead, the ALJ relied on the assessments of Dr. Levoy and Dr. Keuthen, both of whom indicated there was insufficient evidence to establish any severe mental impairment, and had declined to give any opinion regarding Plaintiff's condition or whether he was disabled.  (*Id*. at pp. 151-152).   Because the ALJ found after step two that Plaintiff was not suffering from a severe impairment, the ALJ did not go on to consider steps three through five, and denied Plaintiff's application.[1]  (*Id*. at p. 152).

Plaintiff appealed.  On April 18, 2013, the Appeals Council affirmed the ALJ's decision.  The Appeals Council did find that the ALJ erred at step two, because there were records to indicate that Plaintiff's spina bifida was severe prior to his twenty-second birthday.  However, the Appeals Council agreed with the ALJ that Plaintiff had not established that he was disabled due to bipolar disorder before his twenty-second birthday, and went on to find (presumably at step four) that Plaintiff had the residual functional capacity to perform light work and that there were jobs existing in sufficient numbers in the national economy that Plaintiff could have performed.  (*Id*. at pp. 4-7).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, a "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12

---

[1]Should it be necessary to complete the full evaluation process, step three considers whether the severe impairment meets or equals one of the impairments contained in the SSA's List of Impairments. 20 C.F.R. § 404, subpart P, Appendix 1.  If so, the claimant is conclusively presumed to be disabled.  If not, one moves to step four, which considers whether the applicant's residual functional capacity ("RFC") allows him to perform his past relevant work.  If the claimant is capable of performing past relevant work, he is not disabled.  If the claimant's RFC in step four does not allow him to perform his past relevant work, the burden shifts to the Commissioner in step five to prove that the claimant "is able to perform other work in the national economy in view of [the claimant's] age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(iii-v).

months." 42 U.S.C. § 423(d)(1)(A).  A claimant will be found disabled only if his "impairments are of

such severity that he is not only unable to do his previous work, but cannot, considering his age,

education and work experience, engage in any other kind of substantial gainful work which exists in the

national economy."  42 U.S.C. § 423(d)(2)(A).

In denying Plaintiff's application for child insurance benefits, the ALJ found that Plaintiff had

failed to show he was continuously disabled since before July 1992 --Plaintiff's twenty-second birthday.

The Court's role is limited to determining whether the ALJ's findings are supported by substantial

evidence and whether the ALJ applied the correct legal standards. *Manso–Pizarro v. Sec'y of Health &*

*Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d

218, 222 (1st Cir. 1981).  Substantial evidence means such evidence that "a reasonable mind, reviewing

the evidence in the record as a whole, could accept as adequate to support [the] decision."  *Rodriguez*, 647

F.2d at 222.  It is the role of the Commissioner, and not that of the Court, to determine issues of

credibility, draw inferences from the record evidence, and resolve conflicts about the evidence.  *Id*.

Reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim, or if

the record contains no "evidence rationally adequate ... to justify the conclusion" of the ALJ.  *Roman–*

*Roman v. Comm'r of Social Security*, 114 F. App'x. 410, 411 (1st Cir. 2004).

V.     **ANALYSIS**

Plaintiff argues that the Commissioner's loss of his SSI application files from 1993 and 1995, and

2009 continuous disability review file, adversely affected the consideration of his application and his

ability to show an onset date of before July 1992.  He argues also that there was ambiguity surrounding

the onset date and that the ALJ therefore should have consulted with a medical advisor or expert to clarify

the date.

As noted, the Appeals Council directed the ALJ on remand to consider whether the use of a

medical expert to clarify Plaintiff's onset date was warranted under 20 C.F.R. § 404.1527 and SSR 83-20.

20 C.F.R. § 404.1527 authorizes the use of medical experts and provides guidance on how expert

opinions should be evaluated.  20 C.F.R. § 404.1527.  SSR 83-20 goes further; it provides an "analytical

7

framework for determining [onset] date" that must be followed "where a claimant has already been found disabled under another title of the Social Security Act." *Falconi v. Astrue*, No. 2:12-CV-37, 2012 WL 5381833, *4 (D. Vt. Nov. 1, 2012).

Under SSR 83-20, the "starting point" for determining the onset date of a disability of "nontraumatic origin" is the claimant's own "statement as to when disability began." SSR 83-20, 1983 WL 31249 (1983). The ALJ's task is then to determine whether the alleged onset date is consistent with the evidence in the case. *Field v. Shalal*, No. CIV 93-289-B, 1994 WL 485781, at *3 (D.N.H. Aug. 30, 1994). "Medical evidence serves as the primary element in the onset determination." SSR 83-20. However, SSR 83-20 recognizes that "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling [particularly where] the alleged onset and the date last worked are far in the past and adequate medical records are not available." *Id*. SSR 83-20 goes on to state that the ALJ "should call on the services of a medical advisor when onset must be inferred." *Id*. Courts have construed this language to **require** that the ALJ either call a medical expert or obtain additional evidence where the record is ambiguous regarding onset date. *Godsey v. Astrue*, No. CIV. 08-410PS, 2009 WL 1873528, at *4 (D. Me. June 29, 2009) (report and recommendation adopted, No. 08-CV-410-P-S, 2009 WL 2223396 (D. Me. July 23, 2009)) (reversing and remanding where ALJ failed to call a medical expert to clarify ambiguous evidence regarding onset date); *May v. Social Sec. Admin. Comm'r*, No. 97–1367, 1997 WL 616196, at *1–2 (1st Cir. Oct. 7, 1997) (because evidence regarding date on which claimant's mental impairment became severe was ambiguous, SSR 83–20 required ALJ to consult medical advisor); *Mason v. Apfel*, 2 F. Supp. 2d 142, 147 (D. Mass. 1998) (remanding where ALJ rejected onset date proffered by treating physician and "imposed his own" onset date without the benefit of medical expert testimony).

Medical evidence is ambiguous where there is at least some evidence that would allow the ALJ to infer that the alleged onset date is accurate, but the claimant's medical records do not provide a precise onset date for his disability. *Warneka v. Colvin*, No. 14-CV-00022-PB, 2015 WL 1470955, at *3 (D.N.H. Mar. 31, 2015); see also *Rossiter v. Astrue*, No. 10-CV-349-JL, 2011 WL 2783997, at *2 (D.N.H. July

15, 2011)(evidence regarding onset was such that a reasonable person could have decided either way and was therefore ambiguous such that medical expert should have been called).  In such cases, the ALJ cannot reject the claimant's allegations regarding onset without first consulting a medical expert.  *Id.*; see also *Wilson v. Colvin*, 17 F. Supp. 3d 128, 138 (D.N.H. 2014) (where medical evidence supported claimant's contention regarding onset date, ALJ could not disregard that evidence without first consulting with medical advisor).

This does not mean that an ALJ may never reject a claimant's alleged onset date without first consulting a medical expert.  It is not necessary to consult a medical expert if the alleged onset date is contradicted by contemporaneous medical evidence.  *Field*, 1994 WL 485781, at *3 ("To reject [claimant's] alleged date, the ALJ must determine that it conflicts with the other evidence in record); *Derosier v. Astrue*, No. 08-274-B-W, 2009 WL 961508, at *6 (D. Me. Apr. 7, 2009) (report and recommendation adopted, No. CIV 08-274-B-W, 2009 WL 1259114 (D. Me. May 5, 2009) (plaintiff cannot create ambiguity in medical evidence by offering a retroactive medical opinion that is contradicted by contemporaneous medical evidence).

However, the ALJ may not reject the alleged onset date because of an absence of contemporaneous medical evidence.  *Falconi*, 2012 WL 5381833, at * 4 ("the ALJ's singular focus on the lack of medical evidence from the insured period does not comply with the purpose of the Ruling"); *Mason*, 2 F. Supp. 2d at 147 (Given the "slow and progressive course" of mental illness, it was improper to reject alleged onset date due to "the absence of medical records from the relevant period").  Indeed, a case involving an absence of contemporaneous medical evidence is precisely the type of case where medical expert assistance is required.  As one court explained:

> Nowhere in the SSR is there any suggestion that the absence of medical
> records establishing an onset date is fatal to an individual's claim.  In
> fact, the SSR provides just the opposite, specifically noting that in some
> cases it may be necessary to infer the onset date of a claimant's disability
> from non-medical evidence.

*Moriarty v. Astrue*, No. CIV 07-CV-342-SM, 2008 WL 4104139, at *6 (D.N.H. Aug. 28, 2008).

9

In the present case, and applying the foregoing principles, Plaintiff claimed to be disabled due to bipolar disorder and alleged a disability onset date of before July 22, 1992. Plaintiff's doctors provided opinions and/or comments which provided some support for his claim even if they arguably did not offer an explicit opinion. Most notably, Dr. Holstein opined that Plaintiff's present problems were consistent with the problems he presented with in the mid 1980's, and represented the "evolution of his Bipolar Disorder over time." Again, while not explicit, Dr. Holstein's opinion could reasonably be interpreted to opine that Plaintiff has suffered from bipolar disorder since the 1980's.

By contrast, no physician or records contradicted Plaintiff's claim or Dr. Holstein's opinion of an onset date before July of 1992. The ALJ credited the opinions of Dr. Levoy and Dr. Keuthen in concluding that Plaintiff was not continuously disabled since 1992, but neither Dr. Levoy nor Dr. Keuthen opined that Plaintiff was not disabled. On the contrary, the doctors checked a box on an evaluation form to indicate that they had insufficient evidence to evaluate Plaintiff's condition. They did not opine that Plaintiff was not disabled between 1988 and 1994. Consequently, the ALJ's conclusion that Plaintiff was not continuously disabled before July of 1992 appears to have been based almost entirely on the absence of medical evidence between 1988 and 1994.

To be sure, the ALJ and the Appeals Council reasoned that the gaps in Plaintiff's treatment history and his "normal" appearance on the date of his hearing necessarily contradicted Plaintiff's claim that his bipolar disorder was continuously disabling. But, it does not appear that either the ALJ or the Appeals Council considered whether Plaintiff's failure to consistently seek treatment, or his attempts at self-medication, might be symptoms of his disorder. Although it is the Commissioner's role to resolve conflicts in the evidence, the Commissioner "has not adequately fulfilled that function where he adopts one view of the evidence, without addressing the underlying conflict." *Walsh v. Astrue*, No. 11-cv-108-SM, 2012 WL 941781, at \*4 (D.N.H. Mar. 20, 2012) (citing *Dube v. Astrue*, 781 F. Supp. 2d 27, 35 (D.N.H. 2011)). "One feature – perhaps the hallmark – of bipolar disorder is that it is 'episodic.'" *Id*. (citing *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2005). Further, failure to seek treatment, failure to comply with medical provider instructions and substance abuse may be symptoms of the disorder. *Id*.

10

at 5; *Falconi*, 2012 WL 5381833, at *6 (citing *Beasich v. Comm'r of Soc. Sec.*, 66 F. App'x. 419, 429 (3d

Cir. 2003).  The medical evidence before the ALJ and the Appeals Council demonstrated that Plaintiff

suffered from a mental illness prior to 1988 which required at least one full year of hospitalization, as

well as that Plaintiff has been disabled from bipolar disorder since 1994.  In this light, Plaintiff's sporadic

treatment history between 1988 and 1994 could just as plausibly be consistent as inconsistent with bipolar

disorder.  Similarly, although it is possible that Plaintiff had a mental impairment which appeared before

1988, went away for some period of time, and then reappeared in 1994, it is equally plausible that

Plaintiff's mental impairments existed throughout his life.  *See e.g., Falconi*, 2012 WL 5381833, at *7

(reasoning that it was not plausible or consistent with manner in which mental illness progresses to

assume that claimant's mental impairments manifested, disappeared for some period of time and then

reappeared later).

Against this backdrop, the Court concludes that the evidence before the ALJ was, at best,

ambiguous as to whether Plaintiff was continuously disabled since before July of 1992.  As a

consequence, the ALJ should have consulted with a medical expert to obtain additional information to

help resolve the issue.  Given that there was some medical evidence to support Plaintiff's claim, and no

medical evidence directly refuting it, the ALJ's failure to at a minimum follow SSR 83-20 and call a

medical expert or advisor to clarify onset date was reversible error, and remand is appropriate to allow

such a proceeding to take place.  *Godsey*, 2009 WL 1873528, at *3 (reversing and remanding where ALJ

failed to call a medical expert to clarify ambiguous evidence regarding onset date); *Magnusson v. Astrue*,

No. 08-CV-276-PB, 2009 WL 995480, at *10 (D.N.H. Apr. 13, 2009) (same).

The Court pauses to stress that its decision relates only to the process that should have been

followed, and should now followed on remand, and has nothing to do with what should be the outcome of

that process.  SSR 83- 20 does not require the ALJ to accept the opinion of the medical expert or any

other physician.  See *Nolan v. Astrue*, No. Civ-09-323-P-H, 2010 WL 2605699, at *6 (D. Me. June 24,

2010) (affirming ALJ's decision to reject onset opinion offered by expert).  What is important is that the

ALJ's ultimate determination be based upon medical evidence rather than the ALJ's own opinions.

*Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ may not "ignore medical evidence or substitute his own views for uncontroverted medical opinion.").

**VI.    CONCLUSION**

For the foregoing reasons, the ALJ's failure to comply with SSR 83-20 and consult with a medical expert to help resolve the ambiguity surrounding Plaintiff's onset date was reversible error. Plaintiff's motion (Dkt. No. 20) is accordingly GRANTED, in part.  The Court reverses the Commissioner's decision and remands the matter so the Commissioner may consider Plaintiff's application anew, but with the benefit of the expert consultation contemplated by SSR 83-20.  Though the delay occasioned by the loss of evidence and number of appeals in this case is regrettable, the Court cannot agree with Plaintiff that a remand would serve no purpose.  On the contrary, a remand is necessary to affirm the letter and spirit of the SSA regulations and to ensure that the decision ultimately reached in this case is made with the benefit of all of the appropriate, available evidence.  It follows that Commissioner's cross-motion (Dkt. No. 24) is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  September 30, 2015